**WO**

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Byron Singleton, et al., | ) CV-09-0486-JAT-PHX |
| Plaintiffs, | ) |
| vs. | ) **Order and Second Amended Findings** |
| | ) **of Fact and Conclusions of Law** |
| Michael J. Adick, et al,. | ) |
| Defendants. | ) |
| _____ | ) |

Plaintiffs filed a Motion for Reconsideration (Doc. 134) on February 8, 2011, which the Court construed as a Federal Rule of Civil Procedure 59 Motion to Alter or Amend a Judgment (Doc. 135). Plaintiffs request the Court alter its Amended Findings of Fact and Conclusions of Law to award damages to Joe Charlier and Jeremy Cohee.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 59(a)(2) provides that: "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Rule 59(e) reads: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The Court will grant a Rule 59 motion if: (1) the movant presents newly discovered evidence, (2) the Court committed clear error or the initial decision was manifestly unjust, or (3) if an intervening change in controlling law has occurred. *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

**ANALYSIS AND CONCLUSION**

In its Amended Findings of Fact and Conclusions of Law, the Court did not award damages to Joe Charlier, who testified at the trial, and Jeremy Cohee because the Court did not believe they had filed opt-in notices. Only employees who file written opt-ins may participate as plaintiffs in an FLSA action. 29 U.SC §216(b). Plaintiffs filed their Rule 59 Motion because Joe Charlier and Jeremy Cohee signed written opt-in notices that were attached as exhibits to Plaintiffs' Motion for Class Certification (Doc. 13).

Plaintiffs re-filed the written opt-in notices as separate docket entries after the Court granted FLSA collective action status, but for some reason neglected to re-file the opt-in notices of Joe Charlier and Jeremy Cohee. Because Plaintiffs re-filed the other opt-in notices and the Court reasoned that to file opt-in notices there had to be something to which the employees could opt-in, i.e., a certified FLSA collective action, the Court did not review the exhibits to the Motion for Class Certification when drafting the Findings of Fact and Conclusions of Law.

In their Rule 59 Motion, Plaintiffs argue that courts generally allow opt-ins to be filed at any time during the case. Plaintiffs cite *Piper v. RGIS Inventory Specialists, Inc.*, 2007 WL 1690887 (N.D.Cal. June 11, 2007), in which the district court denied a motion to invalidate opt-in consents that were filed before the court certified a FLSA collective action.

In their response, Defendants do not dispute that opt-in notices can be filed at any time, including before a court certifies a FLSA collective action. Because Defendants have cited no cases holding that opt-in notices are valid only if filed after the court certifies the FLSA action and because Joe Charlier and Jeremy Cohee in fact filed written opt-in notices, the Court will grant the Rule 59 Motion to correct its manifest error. The Court does not need to take additional evidence to amend its judgment because Plaintiffs offered proof of Joe Charlier's and Jeremy Cohee's unpaid wages at trial.

Accordingly,

**IT IS ORDERED** Granting Plaintiffs' Rule 59 Motion (Doc. 134).

**IT IS FURTHER ORDERED** substituting the following Second Amended Findings

of Fact and Conclusions of Law for the Amended Findings of Fact and Conclusions of Law (Doc. 132) entered on February 8, 2011:

**FINDINGS OF FACT**

1. Byron Singleton, Carlos Velasco, Shelly Walker, Gerald McDonald, Steven Davis, Troy Smith, Bernadette Schmidt, Adrian Sanchez, Johnathan Kearny, Timothy Milo, Dawn Milo, James Hininger, David Wright, Joe Charlier, Jerod Powell, Robert Powell, Fernando Lucero, Harry Matson, Irene Lasky, Jacob Silva, John Benavidez, and Jeremy Cohee worked for a company they referred to internally as "Elyte" or "Elyte ATM," which was engaged in the business of transporting money to and from banks, for two pay periods in October and November of 2008 without receiving employment wages. Each pay period consisted of two weeks; so they worked for four weeks total without receiving wages.

2. Defendant Michael J. Adick[1] was the President, CEO, and sole shareholder of Elyte ATM Services, Inc, which was engaged in the business of transporting money to and from banks. At times, Mr. Adick also signed business documents on behalf of and held himself out as the President of Elyte Services, LLC.

3. Byron Singleton, Carlos Velasco, Shelly Walker, Gerald McDonald, Steven Davis, Troy Smith, James Hininger, Bernadette Schmidt, Adrian Sanchez, Johnathan Kearny, Timothy Milo, and Dawn Milo are the named Plaintiffs (collectively, the "Named Plaintiffs") in this case and have joined in the state law causes of action.

4. David Wright, Fernando Lucero, Harry Matson, Irene Lasky, Jacob Silva, John Benavidez, Jerod Powell, Robert Powell, Joe Charlier, and Jeremy Cohee (referred to herein, with the Named Plaintiffs, as the "FLSA Plaintiffs") have filed written opt-in notices (Docs. 53, 55, 57, 58, 59, 61, 66, 72, 13-1)[2] to participate in the representative action under the Fair

---

[1] Mary K. Adick, Mr. Adick's wife, is also a named Defendant in this lawsuit for community property reasons.

[2] Stan Benavidez and Andrew Benavidez also submitted written opt-in notices, but Plaintiffs did not submit proposed findings of fact or conclusions of law regarding wages

Labor Standards Act (the "FLSA").[3] They have not joined in the state law causes of action.

5. After Elyte employees failed to receive wages on the first pay date in November 2008, Mr. Adick assured them that all back wages owed would be added to their next pay check. Many employees were not overly concerned at that point because they often received late pay checks. After employees missed their second paycheck, they became very concerned.

6. In late October or early November of 2008, Mr. Adick informed his office staff that he had decided to close his business and discussed with them their individual duties regarding the closing of the business. Mr. Adick asked his staff not to tell any of the drivers or technicians about the business closing because he was afraid the drivers and technicians would abruptly quit.

7. In December 2008, Elyte closed for business and Central Security began operating a money delivery business from Elyte's former Phoenix headquarters under different ownership. Some of the Named Plaintiffs worked for Central Security after Elyte shut down.

8. Several witnesses testified that they repeatedly asked Mr. Adick to pay their back wages. Mr. Adick consistently acknowledged the debt, but eventually professed his inability to pay.

9. All of the former Elyte employee witnesses – Byron Singleton, Carlos Velasco, Shelly Walker, Jerod Powell, Robert Powell, James Hininger, Johnathan Kearney, Harry Matson, and Joe Charlier (collectively, the "Elyte witnesses") – testified that they believed that Mr. Adick was the owner of Elyte and their ultimate boss throughout the course of their respective employments. The Court finds their testimony credible.

10. Shelly Walters came to work for Elyte for the second time in March or April of 2008. At that time, Mr. Adick interviewed her and then hired her as the office manager. Ms.

---

owed to Stan and Andrew Benavidez from Mr. Adick during the relevant period.

[3] Only employees who file written opt-ins may participate as plaintiffs in an FLSA action. 29 U.SC. §216(b).

4

Walters reported directly to Mr. Adick.

11. After she assumed her responsibilities, Mr. Adick gave Ms. Walters authority to interview new employees and to hire them after receiving his approval.

12. As the office manager, Ms. Walters's duties included overseeing payroll operations for Elyte. She would pick up the time cards, then submit the total hours into an internal computer system, then wait for Mr. Adick to give his authorization to submit the payroll to Paychex Inc.

13. Paychex, Inc cut FLSA Plaintiffs' payroll checks. Elyte then reimbursed Paychex, Inc. with checks drawn on Elyte ATM Services, Inc.'s commercial checking account. Mr. Adick signed the checks to Paychex Inc.

14. On October 6, 2008, Mr. Adick paid Mr. Velasco's employment wages with a check from Elyte Pacific ATM Services. Mr. Adick signed an affidavit attesting that he formed Elyte Pacific ATM Services LLC.

15. In November of 2008, Mr. Adick told Ms. Walters not to process Elyte's payroll.

16. Ms. Walters collected the time cards for Elyte employees in October and November of 2008. She left those time cards in her office at Elyte's Phoenix headquarters when she left Elyte because it was shutting down.

17. In 2008, Elyte ATM Services, Inc. paid SCF Arizona, Arizona State Compensation Fund, with checks signed by Mr. Adick for FLSA Plaintiffs' workers compensation insurance. Ms. Walters forwarded SCF bills to Mr. Adick for payment.

18. In 2008, Elyte ATM Services, Inc. paid Health Net with checks signed by Mr. Adick for FLSA Plaintiffs' health insurance. Mr. Adick authorized Ms. Walters in 2008 to negotiate a renewal with Health Net. Ms. Walters forwarded bills from Health Net to Mr. Adick for payment.

19. Ms. Walters received bills from various vendors; including, phone bills, bills for office supplies, etc., which she would approve, make notations on, then send to Mr. Adick for review and payment. At some point in November of 2008, Mr. Adick instructed Ms. Walters to tell the various vendors that Elyte was closing its doors and would not be paying

any more bills.

20. J.P. Morgan Chase executed a Master Transportation Agreement with Elyte ATM Services, Inc. The contract with Chase constituted approximately eighty percent (80%) of Elyte's business.

21. In April of 2008, Elyte ATM Services, Inc. paid JP Morgan Chase Bank $300,000 stemming from losses incurred during the course of FLSA Plaintiffs' employment.

22. On June 2, 2008, JP Morgan Chase Bank terminated its Master Transportation Agreement with Elyte ATM Services, Inc.

23. Mr. Adick purchased crime insurance policies, at Chase's insistence, to cover risk stemming from thefts.

24. Mr. Adick made claims during 2008 on the crime insurance policies and personally collected $30,000 for a loss that occurred during the course of FLSA Plaintiffs' employment.

25. Mr. Adick signed a sworn affidavit dated February 4, 2009 that reads, "On November 3, 2008, two masked gun men robbed Elyte ATM Services, Inc. employees at an Arizona Federal Credit Union ..." (Exh. 22.) Mr. McDonald, one of the Named Plaintiffs, was one of the employees who was robbed in November of 2008. Mr. Adick therefore attested that a Named Plaintiff was an employee of Elyte ATM Services Inc., the company which Mr. Adick solely owned, in November 2008, the time period at issue in this trial.

26. Mr. Adick was responsible for maintaining accurate records of the time worked by FLSA Plaintiffs during the relevant periods, but did not produce employment records sufficient to prove the amount of wages owing to FLSA Plaintiffs.

27. Mr. Adick exercised supervisory control over FLSA Plaintiffs' employment.

28. The economic reality of the relationship between the FLSA Plaintiffs and Mr. Adick was one of employees and employer.

29. Mr. Adick was aware of his obligations to pay the Elyte employees wages as required by the FLSA and the Arizona Wage Act (the "AWA").

30. Mr. Adick's failure to pay wages to Elyte employees was willful because he either

knew his conduct violated the FLSA and AWA or he showed reckless disregard for whether his conduct complied with the FLSA and AWA.

31. The FLSA Plaintiffs have presented evidence sufficient to demonstrate they are owed unpaid wages (including regular wages, overtime, paid vacation, etc.) in the following amounts:[4]

    a. Byron Singleton - $6,000

    b. Carlos Velasco - $5,000

    c. Shelly Walker - $5,000

    d. Jerod Powell - $2,000

    e. Robert Powell - $2,000

    f. Gerald McDonald - $2,000

    g. James Hininger - $8,000

    h. David Wright - $5,000

    i. Johnathan Kearney - $4,000

    j. Harry Matson - $7,000

    k. Steven Davis - $4,000

    l. Troy Smith - $3,000

    m. Bernadette Schmidt - $1,000

    n. Adrian Sanchez - $2,000

    o. Jacob Silva - $2,000

    p. Dawn Milo - $1,000

    q. Timothy Milo - $2,000

    r. Fernando Lucero - $1,000

    s. Irene Lasky - $2,000

---

[4] John Benavidez filed a written opt-in for the FLSA claims (Doc. 61) and Plaintiffs proposed a finding regarding his employment, but Plaintiffs did not present evidence regarding the amount of unpaid wages owed to Mr. Benavidez. The Court therefore will not award him damages.

t. Joe Charlier - $5,000

u. Jeremy Cohee - $3,500

**CONCLUSIONS OF LAW**

1. The Court has personal jurisdiction over the parties to this action.

2. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331(a) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

4. The FLSA, 29 U.S.C. §201 *et seq.*, is a remedial statute. The central purpose of the FLSA was to enact minimum wage and maximum hour provisions designed to protect employees. *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 760 (9th Cir. 2010).

5. The FLSA establishes wage and record keeping requirements with which employers must comply.

6. Whether an employer-employee relationship existed under the FLSA is a question of law. *Hale v. State of Arizona*, 967 F.2d 1356, 1360 (9th Cir. 1992).

7. The FLSA defines an employer as, "any person acting directly or indirectly in the interest of an employer in relation to an employee . . .." 29 U.S.C. §203(d).

8. Courts have adopted an expansive interpretation of the definition of "employer" under the FLSA to effectuate its broad remedial purposes. *Real v. Driscoll Strawberry Assoc.*, 603 F.2d 748, 754 (9th Cir. 1979). The determination of whether an employment relationship exists does not depend on isolated factors, but upon the circumstances of the whole activity. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). If a person exercises "control over the nature and structure of the employment relationship or economic control over the relationship," then that person is an employer within the meaning of the FLSA. *Id.* (internal citations omitted).

9. The Ninth Circuit Court of Appeals has adopted an "economic reality test" for deciding whether an FLSA employment relationship exists. *Gilbreath v. Cutter Bio., Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991). In reaching that determination, courts consider four

1 non-exclusive factors – whether the alleged employer: 1) had the power to hire and fire the 2 employees; 2) supervised and controlled employee work schedules; 3) determined the rate 3 and method of payment; and 4) maintained employment records. *Id*. These factors are just 4 guidelines and are not blindly applied. *Id*.

5      10. Mr. Adick exercised control over the nature and structure of the FLSA Plaintiffs' 6 employment and exercised economic control over their employment. Mr. Adick therefore 7 was the FLSA Plaintiffs' "employer" as defined by the FLSA; violated the FLSA by not 8 paying their wages; and is responsible for the FLSA Plaintiffs' unpaid wages.

9      11. The FLSA permits an award of double damages against employers who do not pay 10 wages. 29 U.S.C. §216(b)("Any employer who violates the provisions of section 206 or 11 section 207 of this title shall be liable to the employee or employees affected in the amount 12 of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, 13 and in an additional equal amount as liquidated damages.") Courts have discretion to deny 14 double damages if an employer shows that the employer acted in good faith and had 15 objectively reasonable grounds for believing his failure to pay did not violate the FLSA. 16 *Herman v. RSR Sec. Serv. Ltd.*, 172 F.3d 132, 142 (9th Cir. 1999). The employer has a heavy 17 burden to prove good faith and objectively reasonableness because double damages is the 18 award and presumption. *Id*. The Court finds that the FLSA Plaintiffs are entitled to double 19 damages.

20      12. The FLSA Plaintiffs do not have the burden of proving the precise extent of their 21 unpaid work. *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988)(citing *Anderson v. Mt.* 22 *Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). Rather, the FLSA Plaintiffs must 23 demonstrate that they performed work for which they were not properly compensated. *Brock* 24 *v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986). They must present evidence sufficient to 25 show the amount and extent of their work as a matter of just and reasonable inference. *Id*. 26 at 1148 (stating that in view of an employer's "statutory obligation to keep proper records 27 of wages, hours and other conditions and practices of employment, [the burden of proving 28 damages] is not to be an impossible hurdle for the employee.")(internal citations omitted).

13. If, as here, an employer has not maintained accurate payroll records, the burden then shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate the reasonableness of the inference to be drawn from the employees' evidence. *Id.* ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the FLSA.")(citing *Mt. Clemens Pottery*, 328 U.S. at 688). If an employer fails to meet its burden, the Court may award damages to employees, even if "the result be only approximate." *Mt. Clemens Pottery*, 328 U.S. at 688. An award of unpaid wages cannot be barred for imprecision if the speculativeness of the award arises from the employer's failure to keep records as required by the FLSA. *Seto*, 790 F.2d at 1448.

14. The Court can award unpaid wages under the FLSA to non-testifying employees based on the representative testimony of testifying employees. *McLaughlin*, 850 F.2d at 589. The Court may base damages on reasonable inferences from employees' testimony. *Id.* The Court may consider testimony and exhibits regarding wage computations for non-testifying employees. *Seto*, 790 F.2d at 1449 (finding the district court erred in excluding testimony on hearsay grounds about back wage computations that were based in part on employees' statements to the testifying witness about their unpaid wages).

15. The relevant damages totals found in Exhibit 30, along with the testimony of some of the Elyte witnesses, provide sufficient evidence to show the amount and extent of the FLSA Plaintiffs' unpaid wages as a matter of just and reasonable inference. The Court further finds that Mr. Adick has not presented evidence sufficient to negate the reasonableness of the inference to be drawn from the Plaintiffs' evidence.

16. The AWA broadly defines "employer" as "any individual, partnership, association . . . employing any person. . . ." A.R.S. §23-350.

17. Mr. Adick was the Named Plaintiffs' "employer" as defined by the AWA; violated the AWA by withholding their wages; and is responsible for paying their unpaid wages.

18. The AWA provides that when an employer fails to pay wages due an employee, the employee may recover an amount that is three times the amount of the unpaid wages.

A.R.S. §23-355.  The Court finds that the Named Plaintiffs' are entitled to treble damages under the AWA.

19. Mr. Adick retained employment wages for work performed by Named Plaintiffs that Named Plaintiffs are entitled to recoup.  Mr. Adick has been unjustly enriched by the amount of wages not paid to Named Plaintiffs.

20. Mr. Adick violated both the FLSA and the AWA by failing to pay his employees' wages for two pay periods.  Further, Mr. Adick was unjustly enriched by the amount of those unpaid wages.  But because the Court cannot allow duplicative damages, the Named Plaintiffs will receive their unpaid wages multiplied by three and no more.  An award for unjust enrichment is subsumed in that amount.  The FLSA Plaintiffs who are not also Named Plaintiffs shall receive their unpaid wages multiplied by two and no more.

Based on the foregoing Findings and Conclusions,[5]

**IT IS HEREBY ORDERED** that on their claims for unjust enrichment (Count III) and unpaid wages under the Arizona Wage Act (Count II), the Named Plaintiffs shall take judgments against Defendants Mr. and Mrs. Adick in the following amounts:

1. Byron Singleton - $18,000

2. Carlos Velasco - $15,000

3. Shelly Walker - $15,000

4. Gerald McDonald - $6,000

5. James Hininger - $24,000

6. Johnathan Kearny - $12,000

7. Steven Davis - $12,000

8. Troy Smith - $9,000

9. Bernadette Schmidt - $3,000

---

[5] The Court again notes that it never received FLSA opt-in notices for Joe Charlier or Jeremy Cohee and that they are not Named Plaintiffs. The Court further reiterates that Plaintiffs did not propose findings of fact for Stan or Drew Benavidez and that Plaintiffs did not provide a damages estimate for John Benavidez.

10. Adrian Sanchez - $6,000

11. Dawn Milo - $3,000

12. Timothy Milo - $6,000

Total = $129,000

**IT IS FURTHER ORDERED** entering a judgment in favor of the FLSA Plaintiffs, who are not also Named Plaintiffs, on their FLSA claims (Count I) against Mr. and Mrs. Adick in the following amounts:

1. Jerod Powell - $4,000

2. David Wright - $10,000

3. Harry Matson - $14,000

4. Jacob Silva - $4,000

5. Fernando Lucero - $2,000

6. Irene Lasky - $4,000

7. Robert Powell - $4,000

8. Joe Charlier - $10,000

9. Jeremy Cohee - $7,000

Total = $59,000

**IT IS FURTHER ORDERED** that any motion for attorneys' fees filed by Plaintiffs shall comply with Local Rule of Civil Procedure 54.2.

DATED this 24th day of March, 2011.

_James A. Teilborg_
United States District Judge